# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 15-1962-GW(JPRx) | Date | December 21, 2015 |
| Title | Phillips 66 Company v. T.M.B. Enterprises, Inc., et al. | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  
Brian E. Waters

Attorneys Present for Defendants:  
Tom Helo, pro se  
Suzanne Helo, pro se

**PROCEEDINGS:** PHILLIPS 66 COMPANY'S MOTION FOR PROTECTION FROM VEXATIOUS LITIGATION PURSUANT TO LOCAL RULE 83-8 AND FOR SANCTIONS [44]

The Court's Tentative Ruling is circulated and attached hereto. Court hears arguments. For reasons stated on the record, Plaintiff Phillips 66's motion is continued to January 11, 2016 at 8:30 a.m. Defendants will provide a list of the witnesses and an offer of proof by January 4, 2016.

: 03

Initials of Preparer   JG

<u>*Phillips 66 Co. v. T.M.B. Enters., Inc., et al.*</u>, Case No. CV-15-1962-GW (JPRx)
Tentative Ruling on Motion for Protection from Vexatious Litigation and Sanctions

## I. <u>Background</u>

Phillips 66 Co. ("Plaintiff") sues T.M.B. Enterprises, Inc. ("TMB") and Thomas and Suzanne Helo (respectively: "Thomas," "Suzanne," and, together, the "Helos") (collectively, "Defendants"). *See generally* Compl., Docket No. 1. Plaintiff asserts a single cause of action against TMB for breach of contract, and a single cause of action against the Helos for breach of guaranty. *See id.* ¶¶ 15-24. The Helos filed an Answer and Counterclaims on May 15, 2015. *See generally* Helos' Answer & Countercls., Docket No. 21. The Helos asserted four counterclaims against Plaintiff: (1) breach of contract, (2) fraud, (3) breach of covenant of good faith and fair dealing, and (4) declaratory relief. *See id.* ¶¶ 38-81. The Helos' counterclaims rest on a verbal settlement agreement between Plaintiff and the Helos whereby Plaintiff allegedly agreed to discharge all of the Helos' liabilities and obligations (the "Settlement"), a letter from Plaintiff's litigation and claims agent purporting to confirm the Settlement (the "Letter"), and an e-mail indicating that the Helos' obligations were discharged on May 28, 2013 pursuant to the terms of the Settlement (the "E-mail"). *See id.* ¶¶ 51-58; *see also* Docket Nos. 21-1, 21-2. The Court summarized the facts set forth in Plaintiff's Complaint and the Helos' Answer and Counterclaims in greater detail its previous ruling. *See* Tentative Ruling, Docket No. 52.

On October 23, 2015, Plaintiff filed a Motion for Protection from Vexatious Litigation, brought pursuant to Local Rule 83-8, and Sanctions concerning the Helos' counterclaims. *See generally* Mot. for Vexatious Lit. & Sanctions ("Mot."), Docket No. 44. Plaintiff indicated that its investigation revealed that the Settlement described in the Helos' Answer and Counterclaims is "an absolute fabrication," and the Letter and E-mail "are outright forgeries." *See* Mot. at 5:6-9. The purported recipient of the Letter and E-mail, Thomas's then-attorney, Michael Champ ("Champ"), first raised concerns regarding the Letter and Email to the Helos' former counsel after becoming aware of this case and reviewing the Helos' Answer and Counterclaims. *See* Champ Decl. ¶¶ 5, 7-8, Docket No. 44-2; *see also* Docket No. 14-3 (Champ's June 22, 2015 letter to the Helos' former counsel). Plaintiff has now requested that the Court dismiss the Helos' counterclaims with prejudice or, in the alternative, "order the Helos to give security in such amount as the Court determines to be appropriate to secure the payment of any costs, sanctions, or other amounts which may be awarded against the Helos as vexatious litigants." *See*

1

Mot. at 4:2-9. Plaintiff also requested that the Court impose monetary sanctions against the Helos in the amount of $10,230.60, representing the attorneys' fees incurred by Plaintiff in investigating the counterclaims and filing this motion. *See id.* at 4:9-13.

The Helos did not oppose the Motion. Although they were represented by counsel when their counterclaims were filed, the Helos have been proceeding pro se as of July 6, 2015 and July 9, 2015, respectively. *See* Docket Nos. 38, 40. On July 18, 2015, after the Helos' counsel withdrew, the Helos served on Plaintiff Rule 26 disclosures indicating that they intend to amend their pleadings to seek damages in the amount of $3,440,000. *See* Docket No. 44-7 at 7.

At the hearing of November 23, 2015, the Court issued a tentative ruling describing the evidence set forth by Plaintiff and concluding that the Helos fabricated the Settlement, forged the Letter, and altered the E-mail. *See* Tentative Ruling at 5-7, Docket No. 52. The Court indicated that while the circumstances did not satisfy the substantive test for a vexatious litigation order against the Helos, it was inclined to dismiss the Helos' counterclaims and impose the requested monetary sanctions under Federal Rule of Civil Procedure 11 or pursuant to the Court's inherent powers to sanction litigation misconduct. *See id.*

The Helos indicated at the hearing that the Settlement, Letter, and E-mail were indeed fabricated, forged, and altered, but contended that Champ was responsible for the misconduct. Accordingly, the Court indicated that it would dismiss the Helos' counterclaims, which were based on the purported Settlement and fraudulent documents. The Court also ordered Thomas, by December 4, 2015, to file a declaration, including within it a statement under oath, in regards to his assertions that the fraudulent documents were prepared by Champ, and ordered Champ and Plaintiff to respond to Thomas's declaration. *See* Docket No. 52. The Helos also stated that "new evidence ha[d] come up" and they intended to bring new counterclaims against Plaintiff that were not based on the purported Settlement and fraudulent documents. The Court indicated that the Helos were not necessarily precluded from asserting new counterclaims, but ordered them to set forth in writing the basis of those counterclaims by December 4, 2015. The Court scheduled a hearing for December 21, 2015 to resolve these matters and requested that the Helos indicate what efforts they had taken to secure new counsel on that date.

## II. Discussion

### A. *The Court Would Impose Sanctions on the Helos*

Thomas failed to submit a declaration or sworn statement setting forth his assertions

2

regarding Champ's responsibility for the fraudulent documents; instead, he submitted a Reply, several declarations from family members and third-parties, and various other exhibits. *See* Thomas Helo's Reply ("Helo Reply"), Docket No. 53. In his Reply, Thomas states that he "now agree[s] that the [L]etter . . . and [E]-mail are fraudulent," but contends that "[t]here is no evidence the Plaintiffs have submitted to the court that Suzanne and I, Thomas Helo were responsible for producing the fraudulent documents or that either of us knew [they were] fraudulent when submitted to the court." *See id.* at 3:10-13. Thomas states that "all the evidence points to Michael Champ as being the author of the fake documents." *See id.* at 3:13-15. Apparently, Thomas suggests that Champ took it upon himself to fabricate the Settlement, create the fraudulent documents, and mislead the Helos about the status of the dispute such that they believed the documents were authentic when they submitted them in this litigation; Thomas states that he "'drank the Kool Aid' and truly believed in the validity of the document[s]." *See id.* at 3:15-16. In support, Thomas has submitted declarations from the following individuals: (1) Andrew Smyth ("Smyth"), Thomas's opposing counsel in a previous lawsuit; (2) George Schwary ("Schwary"), Suzanne's father; (3) Bulos Helo ("Bulos") and (4) Nawal Helo ("Nawal"), husband and wife, respectively, and the Helos' immediate relatives; (5) John Lippert ("Lippert"), a private investigator and process server previously employed by Champ; and (6) Beth Chrisman ("Chrisman"), a handwriting expert purportedly hired to review various documents signed by Lippert.

The Court finds it appropriate frame the following discussion around the supplemental declaration submitted by Champ. Champ states Thomas "has stolen and used my firm's business name and facsimile numbers, has forged documents in both state and federal courts using my name, my wife's name and our firm name, and is the subject of a five-year injunction for threatening to kill my wife and other acts of harassment." *See* Supp'l Champ Decl. ¶ 1 n.1, ¶ 24, Docket No. 54. Champ again asserts that he had never seen the Letter or E-mail until he reviewed the Helos' counterclaims in June 2015. *Id.* ¶ 5. Champ states that he forwarded a copy of the original, unaltered E-mail to Thomas on May 28, 2013. *Id.* ¶ 10. Indeed, Thomas attached a copy of the original E-mail in Exhibit I of a Reply that he filed in U.S. Bankruptcy Court Case No. 1:11-21470-MT on August 19, 2014, *id.* ¶ 11, Ex. 4, which contradicts Thomas's unsworn assertion that he believed the altered E-mail was authentic when it was submitted in this litigation. Champ states that the only letter he received from the bankruptcy trustee was a letter

3

addressed to both Thomas and himself on July 17, 2012.[1] *Id.* ¶ 15, Ex. 6. Champ sent another copy of the letter to Thomas on July 25, 2012 and advised Thomas of the basis of ConocoPhillips claim against him. *Id.* Champ also details other instances in which Thomas created forged documents in Champ's name, Champ's wife's name, and their firm's name. *See id.* ¶¶ 15-22.

In addition, Champ provides evidence contradicting the statements made by several of Thomas's declarants. For instance, Schwary states that Champ included a copy of the Letter with a September 2012 bill that Champ submitted to him. *See* Schwary Decl. ¶¶ 4-5, Docket No. 53 at 9 of 95. Champ states that Schwary stopped paying for Thomas's legal services in November 2011 and instructed that all future invoices be sent to Thomas for payment. *See* Supp'l Champ Decl. ¶ 6. Champ provides exemplar copies of invoices for legal services sent to Schwary in 2011 and to Thomas in 2012. *See id.* Ex. 1 (May 30, 2011 invoice submitted to Schwary), Ex. 2 (July 6, 2012 invoice submitted to Thomas). Schwary also states that Champ showed the E-mail to Schwary and the Helos at a June 2013 bankruptcy hearing.[2] *See* Schwary Decl. ¶ 7, Docket No. 53 at 9-10 of 95. Champ states that Schwary never attended any hearings in bankruptcy court and indicates that there were no bankruptcy hearings in June 2013. *See* Supp'l Champ Decl. ¶ 12, Ex. 5 (invoice for legal services to Thomas for June 2013, which does not list any hearings). Champ also contradicts Bulos and Nawal's statements that Champ sent a copy of the forged Letter to their attorney, Mo Hadim ("Hadim"), on November 2, 2012, along with a message that "Tom wants to settle." *See* Bulos Decl. ¶ 2, Docket No. 53 at 12 of 95; Nawal Decl. ¶ 2, Docket No. 53 at 14 of 95. Champ states that he last contacted Hadim in October 2011 and – especially given that Hadim was suspended in December 2011 and not eligible to practice law – did not contact Hadim to negotiate a settlement in November 2012. *See* Supp'l Champ Decl. ¶ 13.

Other serious issues exist with respect to Thomas's recent submission to the Court. The purported Lippert declaration submitted by Thomas states that Champ or his wife forged

---

[1] In the original Motion, Plaintiff stated that it appears as if the trustee's signature was copied from the July 17, 2012 demand letter she sent to Thomas to create the forged Letter. *Compare* Docket No. 44-4 (July 17, 2012 demand letter) *with* Docket No. 21-1 (the Letter). As the Court previously indicated, the signatures on the two letters appear to be nearly identical.

[2] Champ's declaration includes some differences in dates from the dates set forth in the declarations submitted by Thomas. For instance, Champ states that no hearing took place on June 20, 2013, while Schwary's declaration does not specify a particular date in June 2013. The reason for such discrepancies is unclear, but the discussion set forth above is not affected by them.

4

Lippert's name on a proof of service and due diligence declaration filed in another action and makes other statements regarding misconduct by Champ. *See* Purported Lippert Decl., Docket No. 53 at 49-48 of 95. Champ submits a declaration from Lippert in which Lippert states that he did not author, prepare, or sign the declaration attributed to him and filed by Thomas. *See* Lippert Decl. ¶ 2, Docket No. 54-1. Lippert also states that Thomas, pretending to be an attorney for another individual, repeatedly contacted Lippert in a "scheme to have [Lippert] file a false declaration concerning service of documents during the month of July, 2014." *Id.* ¶¶ 5-10. Lippert states that he filed a police report with the Los Angeles Police Department ("LAPD") regarding the incident and was thereafter contacted by two homicide detectives who were investigating an anonymous letter sent to the LAPD, which stated that Lippert had been hired by Champ to kill Thomas for $10,000. *Id.* ¶¶ 10-11. Lippert states that he informed the detectives that the allegations were untrue and the LAPD quickly dropped the matter after its investigation revealed that the letter was fake and likely sent by Thomas. *Id.* ¶ 11.

In addition, the Court is concerned that the Smyth declaration, in particular, is also a forgery. There is only one Andrew Smyth licensed to practice law in California. The Court reviewed numerous filings made by Smyth in the Central District of California over the course of the last five years and found that Smyth included his middle initial in the signature block on each filing. The declaration submitted by Thomas does not. In addition, the signatures on the court filings reviewed by the Court bear similarities absent from the signature on the declaration submitted by Thomas.

Based on the foregoing evidence and the evidence discussed in the Court's prior ruling, Docket No. 52, the Court would conclude that the Helos are responsible for the fraudulent documents and, at a minimum, order them to pay the monetary sanctions requested by Plaintiff. Given that Thomas's recent submission to the Court appears to include additional fraudulent documents, the Court would consider imposing additional sanctions against him.

### B. *The Court Would Deny the Helos' Request to File New Counterclaims*

Thomas states that he "believes ConocoPhillips violated [their] contract in numerous ways" and is "responsible for the loss of [his] business and property." *See* Helo Reply at 4:5-6. Rather than setting forth the basis for the proposed breach of contract counterclaim, Thomas attaches his responses to Plaintiff's interrogatories, which he states "speaks for itself." *See id.* at 4:8-9. In that document, he states the following:

5

> ConocoPhillips did not warn me of the takeover of my business when they had prior knowledge. ConocoPhillips helped plan the events that led to the default. ConocoPhillips were in constant communication with the people who were trying to take over my business. ConocoPhillips chose not [to] follow a court order to deliver gas that would have stopped the default. ConocoPhillips lied when they said I said no to gas being delivered to the gas station. When I convinced my family to order gas to get [TMB] [out] of default, ConocoPhillips told them not to.

*See id.* at 36.

Based on Thomas's interrogatory responses, it appears that the proposed counterclaim is premised on ConocoPhillips's alleged breach of the underlying Branded Reseller Agreement it entered with TMB (the "Agreement"); the Helos merely guaranteed TMB's debts to ConocoPhillips in connection with the Agreement and were not parties to the Agreement. *See* Compl. ¶¶ 9-10, Ex. A. Accordingly, only TMB may assert a counterclaim for breach of the Agreement. Further, the Helos may not assert such a counterclaim on TMB's behalf; TMB, a corporation, may only appear in court through an attorney and is currently unrepresented. *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973 (9th Cir. 2004) ("It is a longstanding rule that '[c]orporations and other unincorporated associations must appear in court through an attorney.'") (quoting *Licht v. Am. W. Airlines (In re Am. W. Airlines)*, 40 F.3d 1058, 1059 (9th Cir. 1994)); *see also* C.D. Cal L.R. 83-2.2.2 ("No organization or entity of any other kind (including corporations, limited liability corporations, partnerships, limited liability partnerships, unincorporated associations, trusts) may appear in any action or proceeding unless represented by an attorney permitted to practice before this Court under L.R. 83-2.1.").

To the extent that the proposed counterclaim is somehow premised on the Personal Guaranty (the "Guaranty") that the Helos executed, pursuant to which they guaranteed the payment of TMB's debts to ConocoPhillips, the Helos' counterclaim is compulsory and existed when the Helos responded to Plaintiff's Complaint on May 15, 2015. As such, the Helos were required to assert their counterclaim at that time and may not assert it at this juncture without leave of court. *See* Fed. R. Civ. Proc. 13(a)(1) ("A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.").

"'[A]fter a brief period in which a party may amend [a pleading] as of right,' leave to

amend lies 'within the sound discretion of the trial court.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185-86 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Generally, courts may grant leave to amend whenever "justice so requires." Fed. R. Civ. Proc. 15(a)(2). "[T]he argument for allowing amendment is especially compelling when, as here, the omitted counterclaim is compulsory." *T. J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 370 (5th Cir. 1980). Under Rule 15, courts consider factors such as undue delay, prejudice to the opposing party, bad faith, and futility of amendment in determining whether to grant leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003). Of these factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *See Eminence Capital*, 316 F.3d at 1052 (citing *DCD Programs*, 833 F.2d at 185 ("The party opposing amendment bears the burden of showing prejudice.")). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (citing *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)).

However, when a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, "Rule 16(b)(4) requires a party to show 'good cause' before being granted leave to amend the pleadings, in addition to the showing required under Rule 15." *See* Schwarzer, Tashima, et al., California Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2013) § 15:32, at 15-16 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000)); *see also Johnson v. Mammoth Recreations*, 975 F.2d 604, 607-08 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (internal quotation marks omitted); *see also Coleman*, 232 F.3d at 1294-95.

Pursuant to the Court's Scheduling Order, the last day to add parties and/or amend pleadings was July 17, 2015, mediation was to be completed by October 28, 2015, discovery closed on December 4, 2015, expert discovery closes on January 6, 2016, the last date the Court will hear motions is February 1, 2016, and trial is set for March 15, 2016. *See* Docket No. 41. Accordingly, the Helos must show 'good cause' for the amendment, in addition to the showing

required under Rule 15.

The Helos offer no compelling explanation as to why they failed to file their counterclaim when they responded to Plaintiff's Complaint on May 15, 2015 and failed to request leave to assert the counterclaim in the six months since then. Rather, it appears that the Helos were hopeful that the fraudulent documents they created would direct the outcome of this litigation and only now, after that plan was thwarted, attempt to assert their counterclaim. As Thomas states in his Reply before setting forth the basis of the proposed counterclaim: "I wanted to end this as quickly as possible and the [L]etter . . . I believed was the best way to do that. Now that the letter is proven to be fraudulent, I will go after ConocoPhillips and hold them responsible for all the damages they have caused." See Helo Reply at 4:1-5. Under these circumstances, the Court cannot conclude that the Helos have acted diligently such that good cause for the amendment exists.

The Helos also fail to make the required showing under Rule 15. The lengthy delay in seeking leave to amend and prejudice to Plaintiff in allowing amendment at this late stage each weighs against amendment. As to futility, Thomas fails to set forth any provisions of the Guaranty that were purportedly breached by ConocoPhillips. As to bad faith, Plaintiff has submitted an e-mail dated December 8, 2015 from Thomas to Plaintiff's counsel advising that Plaintiff should pay the Helos in settlement of their counterclaim and stating: "I hope you like L.A. and that you don't have a family back in Houston, because from what I have been told by attorneys I might retain, is that this will take YEARS." See Docket No. 55-1. This suggests that the Helos are acting in bad faith and asserting the counterclaim as a means of drawing out this litigation and/or extracting a settlement. In sum, the *Foman* factors weigh heavily against amendment.

For the foregoing reasons, the Court would deny the Helos' request for leave to assert the proposed counterclaim.

### C. *The Helos Do Not Appear to Have Secured New Counsel*

As to the efforts undertaken by the Helos in securing new counsel, Thomas simply states that he "will be hiring coun[sel] as this case moves forward." See Helo Reply at 6:10. Unless the Helos indicate at the hearing that they have secured new counsel, or that they have undertaken significant efforts and are close to securing new counsel, the Court would deny any requests made by the Helos for continuances to allow them to secure counsel.

## III. Conclusion

The Court would (1) dismiss with prejudice the Helos' counterclaims; (2) impose monetary sanctions against the Helos in the amount of $10,230.60, which represents the attorneys' fees incurred by Plaintiff in connection with Plaintiff's investigation of the Helos' counterclaims and this Motion; and (3) deny the Helos' request to amend their pleadings to assert a new counterclaim. The Court would also consider imposing additional sanctions against Thomas in light of his submission of additional fraudulent documents to this Court.